UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **JAMES RAY PHIPPS** | : | **CIVIL ACTION NO. 2:18-cv-0507** |
| B.O.P. # 25807-001 | | **SECTION P** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **WARDEN FCI OAKDALE** | : | **MAGISTRATE JUDGE KAY** |

### REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus [doc. 1, doc. 1, att. 1] and memorandum in support [doc. 10] filed pursuant to 28 U.S.C. § 2241 by James Ray Phipps, who is proceeding *pro se* in this matter. Phipps is an inmate in the custody of the Bureau of Prisons and is currently incarcerated at the Federal Correctional Institution in Oakdale, Louisiana. The government has filed a response [doc. 13] and the petitioner has filed a reply with additional exhibits. Docs. 14, 15.

This matter has been referred to the undersigned in accordance with the provisions of 28 U.S.C. § 636. For the reasons stated below, **IT IS RECOMMENDED** that the petition be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

### I.
#### BACKGROUND

Phipps brings this petition to challenge the validity of his conviction and sentence for one count of corruptly endeavoring to obstruct and impede the due administration of the Internal Revenue laws, in violation of 26 U.S.C. § 7212(a). Doc. 1; doc. 1, att. 1. He was convicted of that offense, as well as three counts of mail fraud, one count of wire fraud, and three counts of tax

evasion, following a jury trial in the United States District Court for the Northern District of Texas. *United States v. Phipps*, No. 3:06-cr-114, docs. 19, 120 (N.D. Tex. Aug. 12, 2008). The United States Court of Appeals for the Fifth Circuit described his offense conduct as follows, based on the evidence adduced at trial:

> For over twenty years, Phipps has operated self-styled "educational programs dedicated to teaching others how to eliminate their debt and live within their means." Despite notice from the United States Postal Service ("USPS") that both of his prior, similarly structured endeavors were considered illegal pyramid schemes, Phipps created the instant program, Life Without Debt ("LWD"). Members were encouraged to contribute between $2,000 and $100,000; Phipps claimed that a larger contribution would engender larger returns. As with prior schemes, members were required to recruit two new members prior to receiving any payments; they also received educational literature and tapes with anti-income tax messages. Notably, Phipps told participants that the income received through LWD would not need to be reported to the IRS. Phipps himself did not report any of his LWD income to the IRS.
>
> During his ten years of operating LWD, Phipps received notices from the states of Georgia, Oklahoma, and Maryland that LWD constituted a pyramid scheme, and he may be subject to civil or criminal enforcement actions as a result. Indeed, six LWD members were arrested in Florida for felony and misdemeanor promotion of and participation in an illegal lottery. Despite these warnings that his activities might be illegal, Phipps continued to recruit new members through mass mailings, teleconference calls, and seminars in major cities. Phipps sent periodic small payments to members to encourage them to remain in the program, recruit new members, or reinvest in larger payment plans. Though Phipps marketed LWD as a compound-leveraging investment program that would generate large sums of money for its investors, less than nine percent of LWD's approximately 31,000 participants made a net profit above their initial investment. Phipps "earned" $4,606,396 from LWD, $1,381,683 of which was "participation income," and $3,224,782 of which he paid to himself under aliases within the scheme.

*United States v. Phipps*, 595 F.3d 243, 244–45 (5th Cir. 2010). On August 12, 2008, Phipps was sentenced to a 210 month term of imprisonment, including 22 months for the 26 U.S.C. § 7212 violation, with that term to run concurrent to the others. *Phipps*, No. 03:06-cr-114, at docs. 195,

196. By amended judgment, the court also ordered restitution in the amount of $1,402,446.00. *Id.* at doc. 263.

Phipps appealed his conviction to the Fifth Circuit, and that court affirmed his conviction on all counts. *Phipps*, 595 F.3d at 244–48. He sought a writ of certiorari in the United States Supreme Court, which denied same on May 24, 2010. *Phipps v. United States*, 130 S.Ct. 3336 (2010).

On October 7, 2010, Phipps's timely pro se Motion to Vacate under 28 U.S.C. § 2255 ("2010 § 2255 motion") was received by the trial court.[1] *Phipps v. United States*, No. 3:10-cv-2038, doc. 1 (N.D. Tex. Jun. 25, 2012). There Phipps raised several grounds for relief, including lack of subject matter jurisdiction, ineffective assistance of counsel, and unconstitutionally excessive sentence. *Id.* After receiving a response from the government, the magistrate judge recommended that the motion be denied and the trial judge adopted the recommendation. *Id.* at docs. 12, 17, 18. On September 25, 2017, he filed another § 2255 motion in the trial court, raising new constitutional challenges to his conviction and sentence. *Phipps v. United States*, No. 3:17-cv-2720, doc. 2 (N.D. Tex. Oct. 30, 2017). The court ordered the motion transferred to the Fifth Circuit for authorization under 28 U.S.C. § 2255(h), and that court denied same on March 28, 2018. *Id.* at docs. 7, 9, 12.

Phipps now brings the instant habeas petition, arguing that the Supreme Court's recent decision in *Marinello v. United States*, 138 S.Ct. 1101 (2018), shows that he was convicted of a nonexistent offense with respect to his conviction for corruptly endeavoring to obstruct or impede the due administration of the Internal Revenue laws, in violation of 26 U.S.C. § 7212(a) ("§ 7212(a) conviction"). Doc. 1; doc. 1, att. 1. The government has filed an opposition, arguing that

---

[1] Phipps had filed a first Motion to Vacate on September 4, 2008, but this pleading was stricken because he was still represented by an attorney at the time. *Phipps*, No. 03:06-cr-114, at docs. 205, 206.

the court does not have jurisdiction over this petition because Phipps has not shown that *Marinello* calls his conviction into question or that he was foreclosed from raising such a claim in a prior § 2255 motion, as required to seek habeas relief in this court through § 2255's savings clause. Doc. 13. In his reply Phipps attempts to present additional grounds for relief. Doc. 14.

## II.
## LAW & ANALYSIS

### A. Savings Clause Claim

*Habeas corpus* petitions filed pursuant to 28 U.S.C. § 2241 are generally used to challenge the manner in which a sentence is executed. *See Warren v. Miles*, 230 F.3d 688, 694 (5th Cir. 2000). A motion to vacate sentence filed pursuant to 28 U.S.C. § 2255 allows federal inmates to collaterally attack the legality of their convictions or sentences. *Cox v. Warden, Fed. Det. Ctr.*, 911 F.2d 1111, 1113 (5th Cir. 1990). Here Phipps collaterally attacks his conviction, arguing that he has been convicted of a nonexistent offense or that the evidence was insufficient to support his conviction. Therefore, his claim should be advanced in a motion to vacate.

The savings clause of 28 U.S.C § 2255 permits a petitioner to seek habeas relief under § 2241 when the remedy provided under § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). "A § 2241 petition is not, however, a substitute for a motion under § 2255, and the burden of coming forward with evidence to show the inadequacy or ineffectiveness of a motion under § 2255 rests squarely on the petitioner." *Jeffers v. Chandler*, 253 F.3d 827, 830 (5th Cir. 2001). The fact that a prior motion was unsuccessful, or that the petitioner is unable to meet the statute's second or successive requirement, does not make § 2255 inadequate or ineffective. *Id.* Instead, a petitioner wishing to proceed under the savings clause "must make a showing of both actual innocence and retroactivity." *Wilson v. Roy*, 643 F.3d 433, 435 (5th Cir. 2011). The petitioner meets this burden by showing: (1) that his claim is based on a retroactively

applicable Supreme Court decision establishing that he may have been convicted of a nonexistent offense, **and** (2) that his claim was foreclosed by circuit law at the time when it should have been raised in his trial, appeal, or first § 2255 motion. *Reyes-Requena v. United States*, 243 F.3d 893, 903–04 (5th Cir. 2001). Because Phipps must meet both prongs in order to satisfy the savings clause and we readily conclude that he has not shown a right to proceed under the second, we consider only that issue.

Phipps argues that he is entitled to proceed under the savings clause based on the Supreme Court's decision in *Marinello*, supra.[2] There the court addressed the statute under which he was convicted, 26 U.S.C. § 7212(a), and determined that a conviction could not be sustained under this provision unless the government proved that the defendant's obstruction or attempted obstruction of the "due administration" of the IRS was targeted toward pending tax-related proceedings or proceedings that the defendant could reasonably foresee. 138 S.Ct. at 1105–10.

The Fifth Circuit has explained the "foreclosed by circuit law" requirement as follows:

> [W]e have previously adopted the ordinary meaning of "foreclosed"— "exclude[d]" by prior controlling case law. We have consistently held that if an argument **falls within the scope of, and is excluded by, a prior holding of a controlling case**, it is foreclosed by that case. The court need not have specifically considered and rejected the exact claim for it to be foreclosed, as long as the breadth of a prior holding was meant to encompass and preclude the argument.

*Garland v. Roy*, 615 F.3d 391, 397–98 (5th Cir. 2010) (citations omitted; emphasis added).

---

[2] Phipps asserts in his petition and supporting memorandum that he is proceeding on a claim of "actual innocence" based on the Court's holding in *Marinello*. Doc. 1, p. 6; doc. 1, att. 1, pp. 2–4. In his reply, however, he maintains that he "did **not** allege that he is actually innocent of a violation of [§ 7212(a)]" in light of *Marinello* but instead "simply presented a Writ of Habeas Corpus Petition . . . showing that the Justices of the Supreme Court ruled that the same conduct that Phipps had been engaged in for over 20 years is **not** a violation of" § 7212(a). Doc. 14, p. 2 (emphasis in original). Despite his apparent retraction of the repeated assertions of actual innocence, it appears that Phipps still intends to carry his burden under the savings clause, as interpreted in this circuit, of showing that he was convicted of a nonexistent offense.

Phipps argues that the Fifth Circuit was in agreement with the Court's view in *Marinello* until the time it ruled on his appeal, based on the court's decision in *United States v. Reeves*, 752 F.2d 995 (5th Cir. 1985). Doc. 10, p. 2. The court's ruling on Phipps's challenge to this conviction in his appeal did not concern the definition of "due administration," and dicta within that opinion appeared to accept that Phipps's non-payment of his own taxes/advocacy of others to do same satisfied that element.[3] Meanwhile, *Reeves* dealt with the definition of "corruptly" under § 7212(a) and defined that term narrowly, to require that the defendant acted "with the intent to secure an unlawful benefit." 752 F.2d at 999. The panel, however, distinguished the issue before it from the concerns in cases handling corrupt intent under 18 U.S.C. § 1503, which involves influencing or injuring jurors or officers of the court as well as obstruction of "the due administration of justice." *Id.* at 998–99. In contrast to § 1503 offenses, where the statute "presupposes a proceeding the disruption of which will almost necessarily result in an improper advantage to one side of the case," the court noted that "interference with the administration of the tax laws need not concern a proceeding in which a party stands to gain an improper advantage." *Id.* at 999. It then held that the defendant's conduct in filing frivolous common law liens against an IRS agent who was investigating him could qualify as a violation of § 7212(a), but that the trial court had committed reversible error by adopting too broad a definition of "corruptly." *Id.* at 999–1002.

Despite these indications that Phipps's current challenge might be rejected under the Fifth Circuit's interpretation of § 7212(a), as expressed in *Reeves*, the government asserts that that view

---

[3] Phipps only challenged his § 7212(a) conviction on direct appeal by alleging that his tax evasion advocacy speech was a protected under the First Amendment and that the evidence at trial was therefore insufficient to sustain his conviction. The Fifth Circuit rejected this claim, ruling that Phipps's practice of "[t]elling his adherents that he did not report his LWD income to the IRS and encouraging them to do the same" was unprotected because it was speech "likely to incite imminent lawless action." *Phipps*, 595 F.3d at 247. Accordingly, the court determined, the jury was entitled to rely on that speech "as evidence supporting his conviction for corrupt impediment of the internal revenue laws" and there was sufficient evidence at trial to sustain that conviction. *Id.* Thus, the rulings cited by Phipps appear to have no bearing on his ability to raise a *Marinello*-like claim.

was not expressed as precedent until 2017—well after Phipps might have raised the claim on appeal or in his 2010 § 2255 motion. In *United States v. Westbrooks*, 858 F.3d 317 (5th Cir. 2017), the question before the court was whether § 7212(a) required obstruction/attempted obstruction of an ongoing IRS investigation or proceeding. *Id.* at 322. The panel noted that the court's "prior cases involving [§ 7212(a)] do not directly confront this question but treat the statute as not requiring knowledge of a pending IRS action." *Id.* Since *Reeves*, the panel added:

> [W]e upheld convictions under section 7212(a) when there was no pending action: the convictions were based on defendants' corrupt efforts to trigger an investigation into others. *United States v. Saldana*, 427 F.3d 298, 301, 304–05 (5th Cir. 2005) (noting that that the defendant filed "false tax reports regarding several individuals for the purpose of triggering [IRS] audits and thereby harassing and intimidating these individuals"). In doing so, we rejected the defendants' contention that section 7212(a) requires intent to gain a benefit *under the tax laws*. *Id.* If section 7212(a) does not require even that intent, it would not seem to require intent to gain a benefit in a particular investigation or proceeding.

*Id.* It then held, "To the extent we have not already rejected Westbrooks's position [that § 7212(a) requires knowledge of a pending IRS investigation or proceeding], we do so now, joining a majority of the circuits to consider the question." *Id.* Of course, this holding was reversed by the Supreme Court the following year in *Marinello*.

Accordingly, the question for this court is whether Fifth Circuit jurisprudence prior to *Westbrooks* foreclosed Phipps's challenge. We find that it did not. While the court's holding in *Westbrooks* drew support from the fact that prior cases had not imposed a "specific administrative proceeding requirement," it failed to identify any binding statement to that effect from those cases. Instead, both *Reeves* and *Saldana* dealt with the defendant's intent rather than specific level of IRS involvement. The court's interpretation of the "due administration" element did not become explicit until *Westbrooks*. Despite the dicta above Phipps's challenge was not excluded by the "prior holding of a controlling case" at the time he filed his direct appeal or 2010 § 2255 motion.

Accordingly, Phipps does not satisfy the second prong of the savings clause test and this court lacks jurisdiction to consider his petition under 28 U.S.C. § 2241. *See Christopher v. Miles*, 342 F.3d 378, 385 (5th Cir. 2003).

### B. Claims Raised in Reply

As noted above, Phipps asserted several additional grounds for habeas relief in his reply. Doc. 14. The reply was both signed by Phipps and received by this court after the government's response, filed on June 15, 2018. *Id.*; Doc. 13. Accordingly, the under the liberal pleading standards that apply to *pro se* plaintiffs, the court construes the reply as an amendment or supplement adding the additional claims to his petition.

Rule 15 of the Federal Rules of Civil Procedure, which governs a petitioner's ability to amend, is applicable to habeas corpus proceedings. *See, e.g.*, *Cox v. Warden, Fed. Det. Ctr.*, 911 F.2d 1111, 1114 (5th Cir. 1990). Under this rule, a party may amend its pleading once as a matter of course within 21 days of service of a responsive pleading. Fed. R. Civ. P. 15(a)(1)(B). Phipps's reply falls within this deadline. Because his new claims have not undergone any sort of initial review, however, this court will now determine their sufficiency before ordering a supplemental response from the government.

A district court may apply any or all of the rules governing habeas petitions filed under 28 U.S.C. § 2254 to those filed under § 2241. *See* Rule 1(b), Rules Governing § 2254 Cases in the United States District Courts. Rule 4 of the Rules Governing § 2254 Cases authorizes preliminary review of such petitions, and states that they must be summarily dismissed "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." *Id.* at Rule 4. To avoid summary dismissal under Rule 4, the petition must contain factual allegations pointing to a "real possibility of constitutional error." *Id.* at Rule 4, advisory committee note (quoting *Aubut*

*v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970)). Accordingly, we review the pleadings and exhibits before us to determine whether any right to relief is indicated, or whether the petition must be dismissed.

In his reply, Phipps raises the following claims: 1) lack of subject matter jurisdiction by the trial court and 2) plain error in sentencing relating to restitution order. Doc. 14, pp. 3–8. He also appears to raise a claim under *United States v. Santos*, 128 S.Ct. 2020 (2008), in which the Court narrowed the definition of "proceeds" for the purposes of the federal money-laundering statute, 18 U.S.C. § 1956. *Id.* at 9. Finally, he makes various conclusory statements alleging abuses of power by the government. *Id.* at 2–12.

While *Santos* is a retroactively applicable Supreme Court decision under the standards described above, it was decided on June 2, 2008 – before Phipps was even sentenced in this matter – and applied by the Fifth Circuit within the year. *See United States v. Achobe*, 560 F.3d 259, 269–70 (5th Cir. 2008). Accordingly, Phipps cannot show that his *Santos* claim was foreclosed by circuit law at the time he might have raised it on direct appeal or in his prior § 2255 motion.[4] Phipps also fails to point to any retroactively applicable Supreme Court decision showing he might have been convicted of a nonexistent offense in support of his remaining claims. He does not satisfy the savings clause under any claims raised in his amended/supplemental pleading and so the amendment does not change the recommendation that the entire matter be dismissed.

### III.
#### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the instant petition be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction. This dismissal does not bar the

---

[4] Phipps raised the *Santos* claim in a supplement to his 2010 § 2255 motion. *Phipps*, No. 3:10-cv-2038, at doc. 11. The magistrate judge determined that the claim was procedurally barred due to Phipps's failure to raise it on direct appeal, and the court accepted the report and recommendation. *Id.* at doc. 12, pp. 3–4; *id.* at docs. 17 & 18.

petitioner from seeking relief in the trial court through a successive Motion to Vacate. *See* 28 U.S.C. § 2255(h).

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 7th day of September, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE